**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ERIC TERRY, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | Case No. 1:22-cv-00419 |
| Plaintiff, | ) | |
| | ) | Judge Michael R. Barrett |
| vs. | ) | |
| | ) | |
| PAYCOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

This matter is before the Court on Plaintiff's Motion for Equitable Tolling (Doc. 31), which Defendant opposes (Doc. 32).  Plaintiff asks the Court to "toll the statute of limitations period back to October 14, 2022, the date plaintiff filed his motion for court-authorized notice, until sixty days after the putative collective receives notice."  (Doc. 31 PAGEID 218).[1]

**Background.**  On July 19, 2022, Plaintiff Eric Terry filed a Complaint on behalf of himself and a proposed collective of similarly situated employees pursuant to the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201 et seq.).  (Doc. 1).[2]  He later filed a Motion

---

[1] Defendant opposes any tolling of the statute of limitations.  In the alternative, it asks the Court to instead set June 9, 2023—the date Plaintiff filed his Motion for Equitable Tolling—as the effective date "until and if conditional certification is granted."  (Doc. 32 PAGEID 223, 231).

[2] Plaintiff's Complaint also included a second claim for violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA") (Ohio Rev. Code § 4111.03) on behalf of himself and a proposed Ohio Rule 23 class.  (Doc. 1 §§ 46–53).  The parties stipulated to dismissal with prejudice (pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)) of these claims in the wake of an amendment (effective July 6, 2022) to the OMFWSA that eliminated, "among other things, Rule 23 opt-out class actions as a procedural mechanism for pursuing overtime claims brought under R.C. § 4111.03."  (Doc. 27 PAGEID 200).

1

for Court-Authorized Notice on October 14, 2022.  (Doc. 20).  Terry then-legitimately argued that "[a] plaintiff's burden at the notice stage, which occurs at the beginning of a FLSA case, is 'fairly lenient' and requires only 'a modest factual showing' that the plaintiff is similarly situated to the other employees he seeks to notify."  (Doc. 20-1 PAGEID 86).  Seven months later, however, the Sixth Circuit expressly rejected this framework.  *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023) ("But neither do we think a district court should facilitate notice upon merely a 'modest showing' or under a 'lenient standard' of similarity.").  It held instead that, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves."  *Id.* at 1011.  "The strong-likelihood standard is familiar to the district courts[ ]" as it is part of the preliminary-injunction standard.  *Id.*

Judge Kethledge wrote the majority opinion in *Clark*.  Judge Bush wrote a concurring opinion that begins:

> **I fully join the majority opinion but write separately because equitable tolling should be made available to plaintiffs in collective actions under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*** The statute of limitations for FLSA actions is usually two years.  29 U.S.C. § 216(b).  **The heightened standard we announce, with its concomitant discovery and requirement to litigate defenses, may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit.**  As a result, **many potential plaintiffs may not learn of the FLSA action until after the limitations period for some or all of their claims has run**.

*Id.* at 1012 (bold emphasis added).  Judge White concurred in part and dissented in part.  Relevant here, she "agree[d] with Judge Bush that, given the court's new standard,

**district courts should freely grant equitable tolling to would-be opt-in plaintiffs**." *Id.* at 1017 (bold emphasis added).

Within two weeks of *Clark*'s May 19, 2023 release, Defendant Paycor, Inc. filed a Motion for Leave to File Supplemental Authority in Support of its Response (in opposition) to Plaintiff's Motion for Court-Authorized Notice. (Doc. 30). The Court, in turn, conducted a status conference (by telephone) on June 1, 2023 (06/01/2023 Minute Entry) and on June 7, 2023 (06/07/2023 Minute Entry and NOTATION ORDER). Plaintiff's Motion for Equitable Tolling (Doc. 31) was timely filed, as was Defendant's response (Doc. 32), according to the briefing schedule set on June 7.

Plaintiff argues two reasons in support. (Doc. 31 PAGEID 213–217). First, the unique "opt-in" mechanism supports equitable tolling, because, unlike in Fed. R. Civ. P. 23 class actions, the proposed collective members' statutes of limitations continue to run. Second, and mindful of this concern, Plaintiff was "more than diligent" in filing his motion for court-authorized notice (on October 14, 2022), less than two months after Defendant filed its Answer (on August 23, 2022) and within one month of learning (in connection with the parties' Rule 26(f) conferences) that Defendant would not stipulate to notice.

Overall, Defendant counters that equitable tolling is "extraordinary" relief that is not warranted here. It recommends all the mainstream arguments. Among them, "freely granting equitable tolling in FLSA cases just because there is a gap in time between when an FLSA lawsuit is filed and a putative class member opts-in[ ] eviscerates the legislative distinction created by Congress between the FLSA's collective action mechanism and Rule 23's class action mechanism and makes the text of § 216(b) and § 256 superfluous[.]" (Doc. 32 PAGEID 224). And, because "Plaintiff seeks to toll the statute

3

of limitations of other, unidentified, unnamed and uninvolved individuals who are not parties to the case[, s]uch a request lacks standing and any tolling would be advisory in nature." (*Id.* PAGEID 225).  Moreover, deciding now whether tolling is appropriate is "premature." (*Id.* PAGEID 228).  Quoting from a previous ruling by this Court, "it is unclear whether tolling will impact the claims of any opt-in plaintiff.  To the extent a claim of a putative class member may be impacted, the inquiry as to whether equitable tolling is appropriate is individualized and not appropriate for group-wide consideration."  (*Id.* (quoting *Feustel v. CareerStaff Unlimited, Inc.*, No. 1:14-cv-264, 2015 WL 13022173, at *2 (S.D. Ohio Mar. 26, 2015) (Barrett, J.)[3]).  Finally, Defendant reminds the Court that the concurring opinions in *Clark* that favored equitable tolling are "mere dicta."  (Doc. 32 PAGEID 231).[4]

**Analysis.**  "The Sixth Circuit made clear in *Clark*, both in the majority opinion and Judge Bush's concurring opinion, that it has fundamentally changed the architecture of FLSA suits in this Circuit."  *Hyde v. Fricker's USA, LLC*, No. 1:22-cv-591, 2024 WL 4197903, at *3 (S.D. Ohio Sept. 16, 2024) (Hopkins, J.) (citing *Clark*, 68 F.4th at 1012–1013)).  With this in mind, our colleague Judge Hopkins has determined that pre-*Clark* decisions (and cases that rely on them) "no longer offer persuasive authority" on the issue of whether it is "premature for a district court to consider equitable tolling before a plaintiff

---

[3] *See also Sprague v. Universal Transp. Sys. LLC*, No. 1:18cv165, 2020 WL 13528336, at *4, 5 (S.D. Ohio Feb. 24, 2020) (Barrett, J.).

[4] *Cf. Cordell v. Sugar Creek Packing Co.*, 691 F. Supp. 3d 838, 849 (S.D. Ohio Sept. 11, 2023) (Marbley, J.) ("While the controlling opinion in *Clark* provided no commentary on equitable tolling, both the concurrence and dissent in that decision—*i.e.*, **a majority of the panel**—endorsed the proposition that '[e]quitable considerations support the use of tolling for FLSA collective actions.' *Clark*, 68 F.4th at 1014 (Bush, J., concurring); *see also id.* at 1017 (White, J., concurring in part and dissenting in part) ('[D]istrict courts should freely grant equitable tolling to would-be opt-in plaintiffs.' (citation omitted)).") (bold emphasis added).

opts in to an FLSA action." *Id.* at *4.[5] Thus, in *Hyde* he ruled that a named plaintiff has standing to proceed on behalf of potential opt-in plaintiffs. *Id.* at *5; *see Sekala v. Just Mike's Jerky Co., Inc.*, No. 1:24 CV 1369, 2025 WL 1564272, at *4–5 (N.D. Ohio June 3, 2025) ("Consequently, earlier cases concluding that it is premature to consider equitable tolling before a plaintiff opts in, are no longer applicable in light of *Clark.*") (citing *Hyde* & *Duncan v. Magna Seating of Am.*, No. 22-12700, 2024 WL 1049467, at *2 (E.D. Mich. Mar. 11, 2024)). The undersigned will follow suit here.

Whether tolling is appropriate, of course, is a separate inquiry. "Since *Clark*, some courts have acknowledged the likely delays and then applied the traditional tolling factors." *Rakowsky v. Fed. Express Corp.*, No. 2:23-cv-02340-TLP-tmp, 2025 WL 2014333, at *3 (W.D. Tenn. July 17, 2025) (citing, *inter alia*, *Hyde* & *Cordell v. Sugar Creek Packing Co.*, 691 F. Supp. 3d 838, 849–851 (S.D. Ohio Sept. 11, 2023) (Marbley, J.)). "But others have granted tolling based on the delay alone." *Id.* (citing, *inter alia*, *Clark*, 68 F.4th at 1015 (Bush, J., concurring) ("[I]n situations where court delay has time[-]barred a sizeable number of potential plaintiffs, many courts find that the delay alone warrants equitable tolling and decline to analyze the typical equitable tolling factors.") (quoting *Betts v. Central Ohio Gaming Ventures*, LLC, 351 F. Supp. 3d 1072, 1077 (S.D. Ohio 2019) (Watson, J.); *Duncan*, 2024 WL 1049467, at *3 ("The Court

---

[5] Judge Hopkins was referring to three (non-binding) cases from the Northern District of Ohio on which Hyde's employer relied—*Jones v. Ferro Corp.,* No. 1:22-cv-00253-JDA, 2023 WL 4456815, at *7 (N.D. Ohio July 11, 2023); *McElroy v. Fresh Mark, Inc.*, No. 5:22-cv-287, 2023 WL 4904065, at *12 (N.D. Ohio Aug. 1, 2023); and *McCall v. Soft-Lite, LLC*, No. 5:22-cv-816, 2023 WL 4904023, at *11 (N.D. Ohio Aug. 1, 2023). *See Hyde*, 2024 WL 4197903, at *4 & n.3. *Jones*, on which *McElroy* and *McCall* (exclusively) relied, acknowledged that courts were divided on whether equitable tolling was appropriate but ultimately sided with cases that held it was "premature" to consider the issue until employees actually opted-in to the collective. *Id.* at *4. Judge Hopkins noted that *Jones*, in turn, relied on four cases decided pre-*Clark*. *Id.* at *4 & n.4. He then observed that "[s]upport for *Jones* has diminished in the wake of *Clark*." *Id.* at *4.

declines to analyze the typical equitable tolling factors and chooses to review its delay alone[.]"); *Sekala*, 2025 WL 2014333, at *11 ("Because delay alone warrants equitable tolling, the Court need not analyze the equitable tolling factors.")).

The undersigned agrees with the latter "delay alone" approach. Plaintiff advises that, according to Defendant's Senior Director of Implementation, "the potential collective consists of over one hundred current and former Paycor employees." (Doc. 31 PAGEID 214 n.1, PAGEID 216 & Wagner decl., Doc. 21-2 ¶¶ 1–3). The Court is satisfied that an amount in excess of 100 qualifies as "sizable." *See Clark*, 68 F.4th at 1015 (Bush, J., concurring). And the circumstances particular to this case favor application of the "delay alone" approach.

In his concurrence in *Clark*, Judge Bush noted that "[t]olling the FLSA limitations period is familiar to federal courts." *Id.* at 1014. "This is especially true in jurisdictions that have heightened the bar for determining whether potential plaintiffs are 'similarly situated' with party plaintiffs." *Id.* He cites *Gomez v. Global Precision Sys., LLC*, 636 F. Supp. 3d 746, 761–762 (W.D. Tex. 2022), a Fifth Circuit district court bound by *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), with which the majority in *Clark* aligned. So, delay associated with *Clark* and its "heightened standard" is a defining factor in deciding whether to permit equitable tolling. *See Duncan*, 2024 WL 1049467, at *3 ("The Court is responsible for two delays, each an independent basis for tolling. First, by issuing a stay pending *Clark's* resolution, the Court has delayed the issuance of authorized notice. Second, *Clark*'s heightened standard, which contemplates the need for discovery before a decision on whether notice should issue, and this Court's finding that discovery is needed, have introduced further delay.").

6

But Judge Bush also cited *Betts v. Central Ohio Gaming Ventures*, a case in which our colleague Judge Watson granted equitable tolling because the Court's ruling on the plaintiffs' motion for court-authorized notice (then referred to as a motion for "conditional certification") was "unreasonably" delayed.  351 F. Supp. 3d at 1077 ("In the present case, Plaintiffs moved for class certification and timely briefed that motion, but they did not receive a court ruling on that motion for almost sixteen months *after* it became ripe (473 calendar days). Obviously, some delay in ruling on a motion for conditional certification is expected and is the reality of Congress' choice to keep the statute of limitations running until each opt-in plaintiff files his or her consent to opt into the action. *See* 29 U.S.C. § 256(b). . . . What constitutes a 'reasonable' period of time to rule on a ripe motion for conditional certification may vary from court to court or even from time to time within a single court. In any event, this Court concludes that a delay of almost sixteen months is *unreasonable* and was entirely beyond Plaintiffs' control.") (italics emphasis in original).

A small portion of delay in this matter is attributable to the anticipated release of the Sixth Circuit's decision in *Clark* and supplemental briefing in its aftermath.  But these few months pale in comparison to the two-and-one-half years that Plaintiff's motion for equitable tolling has been pending on the docket, a delay the Court sincerely regrets.  The undersigned is well familiar with the concern that if "the predictable and common consequence of crowded court dockets" warranted equitable tolling for potential opt-in plaintiffs, then the extraordinary remedy of equitable tolling would be transformed "into a routine, automatic one."  *Gomez*, 636 F. Supp. 3d at 760 (quoting *Calloway v. AT&T Corp.*, 419 F. Supp. 3d 1031, 1035 (N.D. Ill. 2019)).  While *Calloway* is a pre-*Clark* case,

this tenet to some degree still rings true.  At bottom, though, the length of the court-caused delay in this case is itself extraordinary, calling for a like-kind remedy.

**Conclusion.**  The Court in its discretion conditionally **GRANTS** Plaintiff Eric Terry's Motion for Equitable Tolling (Doc. 31).[6]  As to the tolling period, the Court agrees that Plaintiff was "more than diligent" in filing his Motion for Court-Authorized Notice (Doc. 20) on October 14, 2022, so the period will begin on this date.  Ending the period 60 days after the putative collective "receives" notice, however, would be inexact.  The period instead will end on the date notice is (first) issued to the putative collective.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court

---

[6] To be sure, this ruling will be enforced only if the Court ultimately grants Terry's motion for court-authorized notice, which remains pending.